UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RODERICK D. SPEIGNER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.  2:07-cv-1654-SLB |
| ) | |
| **SHOAL CREEK DRUMMOND MINE,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Summary Judgment.  (Doc. 18.)[1]  Plaintiff Roderick D. Speigner has sued his employer, defendant Shoal Creek Drummond Mine,[2] alleging that it discriminated against him on the basis of his gender in violation of federal law.  Plaintiff also alleges state-law causes of action for assault and battery, invasion of privacy, intentional infliction of emotional distress, and negligent and/or malicious retention, supervision, and training.  Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 18), is due to be granted.

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

[2]Defendant contends that its correct name is Drummond Company, Inc.  (Doc. 4.)

## I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Graham v. State Farm Mut. Ins. Co.*, 193

F.3d 1274, 1282 (11th Cir. 1999)(citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988))(emphasis added).

## II. STATEMENT OF FACTS[3]

Defendant operates the Shoal Creek Mine, which is an underground coal mine. (Doc. 20, Ex. 1 at 95; *id*., Ex. 2 ¶ 2.) Defendant has an Anti-Harassment Policy, which states, "It is a violation the policy of Drummond Company, Inc. for any employee of either sex to harass other employees or job applicants by making unwelcome sexual advances or requests for sexual favors or by engaging in verbal or physical conduct of a sexual nature." (*Id*., Ex. 4 at 2.) As examples of this "conduct which can create a sexually offensive working environment," the policy lists:

> (1) sexually oriented jokes, kidding or teasing; (2) the display of sexual objects or of nude or partially nude photographs; (3) unwelcome touching or brushing a fellow employee; (4) unwelcome flirtations or requests for dates or after hours meetings; or (5) any other conduct which makes an employee feel uncomfortable while at work.

(*Id*.)

With regard to the Complaint Procedure, the policy provides:

> Drummond Company, Inc. strongly condemns any form of harassment, unlawful and otherwise. Any employee who feels that he . . . has been subjected to any form of harassment should <u>immediately</u> report the facts to his . . . immediate supervisor or the Company Equal Employment Opportunity Officer, George Ellis . . . . An investigation of such reports will be undertaken immediately. If this supervisor is the person responsible for the harassment,

---

[3]The Statement of Facts is drawn from the evidence viewed in the light most favorable to plaintiff, the non-moving party, and all justifiable inferences have been drawn in his favor.

the report should be made to the supervisor's immediate superior or to the
Company Equal Employment Opportunity Officer.

(*Id.* at 3 [emphasis in original].)

On July 5, 2005, plaintiff began working for defendant. (*Id.*, Ex. 1 at 14, 252.) At that time, plaintiff signed a Receipt of Policy Manual, which acknowledged that he had read "the Polices and Procedures included in this book." (*Id.*, Ex. 5.)

Shortly before February 2006, defendant assigned plaintiff to work on a construction crew that was supervised by David Cain. (*Id.*, Ex. 1 at 42-43; *id*, Ex. 2 ¶ 10.) Plaintiff worked with Cain for about month until the mine was shut down on February 24, 2006. (*See id.*, Ex. 1 at 44-45; *id.*, Ex. 2 ¶ 11.) Plaintiff was recalled to work on July 31, 2006. (*Id.*, Ex. 2 ¶ 12.) He worked on Cain's crew until November 5, 2006, when he was assigned to a Roof Bolter position on the evening shift. (*Id.*, Ex. A at 230-31; doc. 22, Ex. D at 00102.) Plaintiff worked with Cain for approximately four months. Cain's crew included a woman named Vera. (*Id.*, Ex. 1 at 43, 156.)

Plaintiff alleges that Cain sexually harassed him while working on his crew. He testified:

> On a regular basis, almost from day to day, he would stick his finger in people's butt, he stuck it in my butt. He put me in a full Nelson[4] and grinded

---

[4]Plaintiff describes this "full Nelson" as "he took his arms up under my arms and behind my neck and applied pressure." (Doc. 20, Ex. 1 at 173-74.) The American Heritage Dictionary of the English Language defines a "full nelson" as "A wrestling hold in which both hands are thrust under the opponent's arms from behind and then pressed against the back of the opponent's neck." The American Heritage Dictionary of the English Language

4

on my butt like he was getting off . . ., and he chased me with his penis in his hand.

(*Id*., Ex. 1 at 148-49 [footnote added].)  The record contains evidence that, on one occassion when plaintiff appeared to be "down," Cain stated, I know what would get [plaintiff] up.  Pretty [B]oy will get him up."  (Doc. 22, Ex. B ¶ 3.)[5]  Cain referred to his penis as "Pretty Boy."  (*Id*.; *see also* doc. 20, Ex. 1 at 214-15.)  Plaintiff said that he was "concern[ed] that Mr. Cain was coming on to [him] sexually."  (*Id*. at 149.)  He testified that every time Cain touched him "in an unclean way, [he] would tell [Cain] to stop and ask him [']what [kind] of man are you, you're sick[']."  (*Id*. at 151.)

Plaintiff testified that he saw Cain "get behind Morris [Caffey, plaintiff's co-worker,] and hunch him just like a dog would another dog."  (*Id*. at 150.)  He said that Cain would do this every week.  (*Id*.)

The record contains no evidence that Cain ever harassed a female employee.

Shortly after the penis incident in August 2006, plaintiff reported the harassment to his Union Steward.  (*Id*. at 48-51.)  Plaintiff did not receive a written copy of the grievance, and he never attended any union meetings where his grievance was discussed.  (*Id*. at 51-52.)  Indeed, the record contains no evidence that the Union Steward ever prepared a grievance

---

(4th ed. 2000) as found at <<http://www.bartleby.com/61/83/F0358300.html>>.

[5]Exhibit B of plaintiff evidentiary submission is the affidavit of Phillip Pruitt, plaintiff's co-worker.  (Doc. 22, Ex. B.)  Defendant has moved to strike this affidavit.  The court has considered the affidavit and the incident it recounts, and it finds that this incident does not alter the court's decision to grant defendant's Motion for Summary Judgment.  Therefore, defendant's Motion to Strike, (doc. 24), will be denied as moot.

on plaintiff's behalf.  A month or two later, plaintiff told the Union Steward not to process the grievance because he "was afraid of retaliation and losing [his] job at that time."  (*Id.* at 48, 53.)

After he dropped his grievance, Cain stuck his finger in plaintiff's butt again.  (*Id.* at 151-53.)  He called plaintiff a "sissy."[6]  (*Id.* at 240.)  This was the last incident of harassment and occurred on the last day plaintiff worked with Cain.  (*Id.* at 153 and 240.)

Plaintiff testified that he sought to file another grievance, but the Union Steward told him that, because more than ten days had passed since the August 2006 incident, the union would not pursue a grievance regarding that incident.  (*Id.* at 53.)

Some time later, plaintiff called Rich Painter, the General Mine Manager.  (*Id.*, Ex 2 ¶ 13.)  During the course of this conversation, plaintiff told Painter that Cain was sexually harassing him, but plaintiff asked Painter not to take any action on his complaint.  (*Id.*, Ex. 1 at 143-46; *id.*, Ex. 2 ¶ 15.)  Painter told plaintiff that he would investigate, that he could move plaintiff to a different crew, and that plaintiff should meet with him to discuss the issue further.  (*Id.*, Ex. 2 ¶ 14.)  Plaintiff told Painter he did not want him to do anything and plaintiff did not come by and meet with Painter.  (*Id.* ¶ 15; *id.*, Ex. 1 at 145-46.)

After plaintiff's call, Painter questioned Cain about plaintiff's complaint, which Cain denied.  (*Id.*, Ex. 2 ¶ 16.)  Nevertheless, Painter told Cain to make sure that he did not engage

---

[6]A "sissy" is an "effeminate man or boy."  *See* <<http://www.merriam-webster.com/dictionary/sissy>>.

in any sexually harassing conduct. (*Id.* ¶ 18.) Painter moved plaintiff to another crew with no change in his pay or hours. (*Id.* ¶ 19; *id.*, Ex. 1 at 48, 227, 273.) Thereafter, Cain did not harass plaintiff. (*Id.*, Ex. 1 at 228, 273.)

George Ellis, defendant's Director of Human Resource Operations and its EEO Officer, testified that, other than plaintiff's complaint, defendant had received no complaints of sexual harassment or discrimination by Cain. (*Id.*, Ex. 7 ¶ 9.) He also testified that defendant had not received any other complaints of sexual harassment in at least ten years. (*Id.* ¶ 12.)

On November 20, 2006, plaintiff filed a Charge of Discrimination with the EEOC. (Doc. 1, Ex. A.) After receiving his Notice of Right to Sue, (*id.*, Ex. B), plaintiff filed the instant action.

### III. <u>DISCUSSION</u>

**A. SEXUAL HARASSMENT**

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78 (1998). To establish a claim for hostile or abusive working environment sexual harassment, an employee must show:

> (1) that . . . [he] belongs to a protected group; (2) that [he] has been subject to unwelcome sexual harassment . . .; (3) that the harassment must have been based on [his] sex . . .; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a

7

discriminatorily abusive working environment; and (5) a basis for holding [his] employer liable.

*Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 582 (11th Cir. 2000)(citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir.1999)); *see also Walton v. Johnson & Johnson Services, Inc.*, 347 F.3d 1272, 1279-80 (11th Cir. 2003).   Defendant argues that it is entitled to judgment on plaintiff's sexual harassment claim because plaintiff cannot establish that the harassment was based on his sex, he cannot establish that the harassment was sufficiently severe or pervasive to be actionable, and, even if plaintiff can establish actionable sexual harassment, it is entitled to the *Faragher* affirmative defense.

**1.  Harassment Based on Sex**

"Title VII prohibits discrimination because of sex in the terms or conditions of employment.  [The Supreme Court's] holding that this includes sexual harassment must extend to sexual harassment of any kind that meets the statutory requirements." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79-80 (1998)(internal quotations omitted). A plaintiff can prove gender-based harassment in a number of ways:

> Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex. The same chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual. But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the

> presence of women in the workplace. A same-sex harassment plaintiff may also, of course, offer comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace. Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted ***discrimination*** because of sex.

*Oncale*, 523 U.S. at 80-81 (emphasis in original; internal quotations and citations omitted).

"[W]here a supervisor makes sexual overtures to employees of both genders, or where the conduct is equally offensive to male and female workers, the conduct may be actionable under state law, but it is not actionable as harassment under Title VII because men and women are accorded like treatment." *Fitzpatrick v. Winn-Dixie Montgomery, Inc.*, 153 F. Supp. 2d 1303, 1306 (M.D. Ala. 2001)(citing *Oncale*, 523 U.S. 75; *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.1982)). "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale*, 523 U.S. at 80 (citations omitted). "Because a claim of sexual harassment under Title VII is a claim of disparate treatment, in order to prevail a plaintiff must show that similarly situated persons not of [his] sex were treated differently and better." *Baldwin v. Blue Cross/Blue Shield of Alabama,* 480 F.3d 1287, 1302 (11th Cir. 2007)(internal quotations and citations omitted); *see McCowan v. St. John's Health System, Inc.*, 349 F.3d 540, 543-44 (8th Cir. 2003)(plaintiff failed to demonstrate harassment was based on gender when evidence showed that only men worked in the project shop, where harassment occurred, and women worked

9

in the office; plaintiff testified that he was unaware how alleged harasser treated the women in the office).

Citing *McCown v. St. John's Health Sys.*, 349 F.3d 540 (8th Cir. 2003), *cert. denied*, 541 U.S. 974 (2004),[7] defendant argues that plaintiff cannot show that the conduct alleged was more than vulgar horseplay. (Doc. 19 at 16-17.) In *McCown*, the Eighth Circuit of Appeals that plaintiff had not established that the alleged conduct was based on plaintiff's gender because he had not demonstrated that the harasser "was homosexual and motivated by sexual desire toward [plaintiff]," or that the harasser "was motivated by a general hostility to the presence of males in the workplace.," or that the harasser "treated males and females [differently] in a mixed-sex workplace to determine." *McCown*, 349 F.3d at 543. Based on the specific facts of the case, the *McCown* court held that the plaintiff had not shown disparate treatment because the record showed that the harasser "only supervised the men who worked outside the office area of the projects shop in which the women worked," "[t]he record [was] silent as to the amount of interaction that [the harasser] had with the women in the office area of the projects shop," and the plaintiff was unaware of the harasser's conduct toward the women in the workplace. *Id*. at 544.

Unlike *McCown*, the record in this case contains evidence that a woman worked on Cain's crew at the same time as plaintiff and that she was not subjected to the same harassing

---

[7]"[A]uthority from one circuit of the United States Court of Appeals is not binding upon another circuit." *Generali v. D'Amico*, 766 F.2d 485, 489 (11th Cir. 1985)(citing *United States v. Diamond*, 430 F.2d 688 (1970)).

conduct as plaintiff. The only two individuals alleged to have been targeted by Cain were male. The alleged harassing conduct was of a sexual nature, and Cain had referred to plaintiff as a "sissy." A reasonable jury could find that Cain harassed plaintiff because he was a man. Therefore the court finds, for purposes of summary judgment only, the conduct at issue was based on plaintiff's sex.

**2. Severe or Pervasive**

In *Gupta*, the Eleventh Circuit held:

The fourth element – that the conduct complained of was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment" – is the element that tests the mettle of most sexual harassment claims. Requiring the plaintiff to prove that the harassment is severe or pervasive ensures that Title VII does not become a mere "general civility code."

*Gupta*, 212 F.3d at 583 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

"Title VII prohibits only the type of severe or pervasive sexual harassment that 'alter[s] the conditions of the victim's employment.'" *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 509 (11th Cir. 2000)(quoting *Oncale*, 523 U.S. at 80-81). It "does not prohibit all verbal or physical harassment in the workplace, and does not reach genuine, but innocuous, differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." *Id*. (internal quotations omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788. The "conduct must be ***extreme*** to amount to a change in the

terms and conditions of employment . . . ." *Id.* (citing *Carrero v. New York City Housing Auth.*, 890 F.2d 569, 577-78 (2d Cir. 1989); *Moylan v. Maries County*, 792 F.2d 746, 749-50 (8th Cir, 1986))(emphasis added).

Defendant contends that plaintiff cannot establish that the harassing conduct at issue was sufficiently severe or pervasive to alter the terms and conditions of plaintiff's employment. (Doc. 19 at 14-15.) The court disagrees.

Plaintiff testified that Cain touched him inappropriately as often as once a week over the months he worked with Cain.[8] The touching was of a sexual nature and disturbing to

---

[8]Plaintiff's testimony on this point is confusing. He testified:

> . . . Whenever I bent over, he would stick his finger in my butt. . . . [T]his is almost every single day . . . .
>
> Q. So every day while you were on his crew –
>
> A. I wouldn't say every day, but I would say every week.
>
> Q. Once a week?
>
> . . .
>
> A. Maybe. I cannot . . . recall if it was once a week, twice a month, . . . . I know it was happening and it was happening almost in a pattern.

(Doc. 20, Ex. 1 at 153-54.) He also testified that "it was almost on a routine, . . . every week or every two weeks or sometimes back to back . . . ." (*Id*. at 165.) Plaintiff also could not remember precisely how long he worked for Cain. (*Id*. at 168-69.). He worked for Cain approximately one month before the mine was shut down. (*See id*., Ex. 2 ¶¶ 10-11.) He was recalled on July 31, 2006, and continued to work for Cain. (*Id*., Ex. 1 at 46, 47; *id*., Ex. 2 ¶ 12.) He did not work for Cain after he moved to the evening shift and became a Roof Bolter. (*See id*., Ex. 1 at 227-28; 230-31.); His personnel file indicates that he moved to the Roof

plaintiff.  On a night in August, Cain, while exposing himself, chased plaintiff.  He also placed plaintiff in a wrestling hold and simulated having sex with plaintiff.  Viewing all the evidence in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, a reasonable jury could find that this conduct was pervasive and severe.

In light of Eleventh Circuit case law, the court finds that the incidents of which plaintiff complains are sufficiently "extreme" to have altered his work environment or a reasonable person's work environment because of sex.  *Compare Hulsey v. Pride Restaurants*, 367 F.3d 1238, 1248 (11th Cir. 2004)(finding harassment was objectively severe and pervasive based on 18 incidents over two and half weeks including the harasser's "direct as well as indirect propositions for sex," "following [plaintiff] into the restroom, and repeated attempts to touch her breasts, place his hands down her pants, and pull off her pants," and "enlisting the assistance of others to hold her while he attempted to grope her"); *Johnson*, 234 F.3d at 509 (finding harassment was objectively severe and pervasive based on "fifteen separate instances of harassment over the course of four months," which included the harasser "giving [plaintiff] unwanted massages, standing so close to [plaintiff] that his body parts touched her from behind, and pulling his pants tight to reveal the imprint of his private parts") *with Gupta*, 212 F.3d at 584-85 (harassing conduct - including "one occasion

---

Bolter position effective November 5, 2006.  (Doc. 22, Ex. D at 00102.)  As best the court can determine, plaintiff worked on Cain's crew from the end of January 2006 until the beginning of November 2006, with a break in service from February 24, 2006 until July 31, 2006.

13

[when harasser said], 'You are looking very beautiful,'" frequent telephone calls, isolated "comments about the promiscuity of people from Jamaica as compared to the innocence of people from India," harasser "stared at [plaintiff] twice, touched her ring and bracelet once, and kept asking her to lunch," and harasser "plac[ed] his hand on [plaintiff's] knee once, and . . touch[ed] the hem of her dress once" over six or seven months – was not sufficiently severe or pervasive conduct); *Mendoza*, 195 F.3d at 1247 (harassing conduct –"(1) one instance in which [the harasser] said to [plaintiff,] 'I'm getting fired up'; (2) one occasion in which [the harasser] rubbed his hip against [plaintiff's] hip while touching her shoulder and smiling; (3) two instances in which [harasser] made a sniffing sound while looking at [plaintiff's] groin area and one instance of sniffing without looking at her groin; and (4) [harasser's] 'constant' following and staring at [plaintiff] in a 'very obvious fashion'" – not sufficiently severe or pervasive).

Therefore, the court finds sufficient evidence to support a finding by a reasonable jury that plaintiff's work environment was altered by severe and pervasive sexual harassment.

### 3. *Faragher* Affirmative Defense

The court finds that defendant is entitled to judgment as a matter of law based on the *Faragher* affirmative defense.

Generally, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Mandray v. Public Supermarkets, Inc.*, 208 F.3d 1290,

14

1296 (11th Cir. 2000) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)); *see also Burlington Industries v. Ellerth*, 524 U.S. 742 (1998). However, in *Faragher*, the Supreme Court "created an affirmative defense providing employers a safe harbor from vicarious liability when the victimized employee suffered no adverse tangible employment action."[9] *Id.* The employer must satisfy two elements to successfully interpose the *Faragher* affirmative defense: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* at 1296-97.

In the present case, defendant meets the first requirement for the *Faragher* defense by showing that it promulgated an anti-harassment policy and acted promptly to stop Cain's harassment once it received plaintiff's complaint. The evidence is undisputed that defendant had an anti-harassment policy and disseminated the policy's complaint procedures. (Doc. 20, Ex. 2 ¶ 6.) The anti-harassment policy provided that an employee could report sexual harassment to his supervisor, his supervisor's superior, or the EEO Officer. (*Id.*, Ex. 4 at 3.) The Eleventh Circuit has found similar policies to be reasonable. *See Madray*, 208 F.3d at 1298-99 (policy directing employees to report sexual harassment to "the Store Manager, District Manager, or Divisional Personnel Managers," or "anyone in management" was a

---

[9]This affirmative defense is unavailable when the supervisor's harassment culminates in a tangible adverse employment action, such as discharge, demotion, or undesirable reassignment. *See Faragher*, 524 U.S. at 808.

reasonable policy) *Coates v. Sundor Brands*, 164 F.3d 1361, 1364 (11th Cir. 1999) (policy directing employees to report sexual harassment to their "line manager, Personnel Contact or other manager with whom they feel comfortable" was a reasonable policy).

Defendant gave plaintiff a copy of the policy when he was hired. Although plaintiff testified that he was not trained regarding reporting sexual harassment, he does not dispute that he received the policy.

Furthermore, the evidence is undisputed that defendant acted promptly in response to plaintiff's complaint. Plaintiff first reported Cain's harassment to defendant when he called Painter.[10] Painter immediately questioned Cain regarding the incident and he moved plaintiff to another crew. From the time that he first complained to Painter, he was not harassed by Cain.

The second requirement for the *Faragher* defense is met because plaintiff failed to fulfill his obligation of reasonable care to avoid the harm created by Cain's alleged harassment. "Once an employer has promulgated an effective anti-harassment policy and disseminated that policy and associated procedures to its employees, then it is incumbent upon the employees to utilize the procedural mechanisms established by the company specifically to address problems and grievances." *Madray*, 280 F.3d at 1300 (internal citations and quotation marks omitted). "While proof that an employee failed to fulfill the

---

[10]Although plaintiff contends that he reported the sexual harassment to his union representative, the parties agree that neither a complaint nor a union grievance was filed with defendant before plaintiff called Painter.

corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense." *Faragher*, 524 U.S. at 807-08. If plaintiff was, as he alleges, subjected to a hostile work environment over a period of time, he was required to use defendant's reporting procedures. The evidence is undisputed that plaintiff did not utilize defendant's procedures for reporting sexual harassment until he called Painter. Therefore, the court finds that defendant has established the second requirement of the *Faragher* defense.

Even if Cain created a hostile work environment, defendant is entitled to interpose the *Faragher* defense to eliminate its vicarious liability. Defendant promulgated and disseminated an anti-harassment policy with appropriate complaint procedures. When defendant received plaintiff's complaint, it promptly took action to correct Cain's sexually harassing behavior. Furthermore, plaintiff unreasonably delayed his use of defendant's complaint procedure. Consequently, summary judgment is due to be granted as to plaintiff's hostile work environment claim.

**B. DEFENDANT'S VICARIOUS LIABILITY FOR CAIN'S STATE-LAW TORTS**

Plaintiff alleges that defendant is liable for Cain's intentional torts of (1) assault and battery; (2) invasion of privacy; and (3) intentional infliction of emotional distress. In Alabama, "[a]n employer is liable for the intentional torts of its employee if: (1) the

employee's acts are committed in furtherance of the business of the employer; (2) the employee's acts are within the line and scope of his employment; or (3) the employer participated in, authorized, or ratified the tortious acts." *Ex parte Atmore Community Hosp.*, 719 So. 2d 1190, 1194 (Ala. 1998) (citing *Potts v. BE&K Constr. Co.*, 604 So. 2d 398, 400 (Ala. 1992)). Nothing in the record indicates that a reasonable jury could find that Cain's actions of which plaintiff complains were taken in furtherance of defendant's business or in the line and scope of Cain's employment. Therefore, in order to hold defendant liable for Cain's intentional acts, plaintiff must prove that defendant participated in, authorized, or ratified Cain's acts. Plaintiff alleges that defendant ratified Cain's conduct.

> An employer ratifies conduct if: (1) the employer has actual knowledge of the tortious conduct; (2) based on this knowledge, the employer knew the conduct constituted a tort; and (3) the employer failed to take adequate steps to remedy the situation. "Adequate" means that the employer took reasonable and necessary steps to stop the tortious conduct.

*Id.* at 1195 (citing *Potts*, 604 So. 2d at 400-01).

As set forth above, defendant took adequate steps to stop Cain's harassment of plaintiff as soon as plaintiff complained to Painter. Nothing in defendant's conduct would support a finding that defendant ratified Cain's conduct. Therefore, plaintiff's claims of assault and battery, invasion of privacy, and intentional infliction of emotional distress are due to be dismissed.

**C.  NEGLIGENT AND/OR MALICIOUS RETENTION, SUPERVISION, AND TRAINING**

18

Plaintiff alleges that defendant failed to properly train Cain regarding its anti-sexual harassment policies. He also alleges that it failed to properly supervise him. Alabama law provides:

> In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. ***Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge.*** It is incumbent on the party charging negligence to show it by proper evidence. This may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care must have had them brought to his notice. While such specific acts of alleged incompetency cannot be shown to prove that the servant was negligent in doing or omitting to do the act complained of, it is proper, when repeated acts of carelessness and incompetency of a certain character are shown on the part of the servant to leave it to the jury whether they would have come to his knowledge, had he exercised ordinary care.

*Pritchett v. ICN Medical Alliance, Inc.*, 938 So. 2d 933, 940 (Ala. 2006)(quoting *Thompson v. Havard*, 235 So.2d 853, 858 (1970))(emphasis in *Pritchett*).

The record contains no evidence that defendant had knowledge of Cain's alleged incompetency prior to plaintiff's complaint to Painter. Therefore, as a matter of law, plaintiff cannot prove defendant negligently or maliciously supervised, trained, or retained Cain. Defendant's Motion for Summary Judgment as to this claim is due to be granted.

## **CONCLUSION**

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law. An Order granting

19

defendant's Motion for Summary Judgment will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this the 21st day of September.

_____
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE